

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**04/17/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| **SADLER CLINIC, PLLC**, *et al* | § | **CASE NO: 12-34546** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| **ALLISON D. BYMAN, CHAPTER 7** | § | |
| **TRUSTEE** | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 14-03231** |
| | § | |
| **ANGELICA TEXTILE SERVICES, INC.** | § | |
| Defendant(s) | § | |

### MEMORANDUM OPINION

Allison D. Byman, the chapter 7 trustee for Sadler Clinic, PLLC and Montgomery County Management Company, LLC (collectively, "Sadler"), filed a motion to quash a subpoena served by Angelica Textile Services, Inc. Byman claimed the subject of the subpoena, a memorandum prepared by the Strasburger & Price LLP law firm, constituted attorney work product. The motion to quash the subpoena is granted.

### Background

On June 15, 2012, Sadler entities filed voluntary chapter 11 petitions for relief. (ECF No. 1). Sadler operated a multi-specialty physician clinic known as Sadler Clinic. (Case No. 12-34546; ECF No. 7 at 3). In 2010, Sadler Clinic operated 13 locations and had a staff of more than 600 health-care professionals. *Id.* However, that same year, more than a quarter of Sadler Clinic's physicians resigned. Replacement physicians were not able to offset the loss in revenue caused by the departures. *Id.* at 4. In an attempt to offset the decreased revenue, Sadler entered into an Asset Purchase Agreement and Affiliation Agreement with the Hospital Corporation of

America and HCAPS Conroe Affiliation, Inc., an HCA affiliate. *Id.* The agreements provided that Sadler would sell approximately $21 million worth of equipment, furniture, fixtures and software to HCA. *Id.* In turn, HCA would lease the assets back to Sadler and provide capital advances totaling approximately $9 million in exchange for monthly payments equaling 3.5% of the Sadler's revenue for 40 years. *Id.* at 5.

HCA advanced $3,412,110.22 under the agreements. However, this advance was unable to solve Sadler's cash flow problems. Sadler made several requests to HCA that it advance the remaining funds. HCA refused, arguing that any funds beyond the initial $3.4 million were only to be used for mutually agreed upon growth opportunities and physician recruitment, not for general financial expenses. (Case No. 12-34546; ECF No. 27 at 2). The parties subsequently entered into negotiations, but they proved unsuccessful. After Sadler filed bankruptcy, they filed an application to employ Strasburger & Price to investigate and prosecute claims against HCA and related entities for potential violations of the Affiliation Agreement. (Case No. 12-34546; ECF No. 51 at 2). The Court granted the application on July 26, 2012.

On July 6, 2012, Sadler commenced an adversary proceeding against HCAPS and certain affiliated entities. (Case No. 12-3299; ECF No. 1). The complaint alleged, *inter alia*, that "the intent of the parties and the effect of the Affiliation Agreement was to create a partnership for a single business venture [between Sadler and HCAPS]." *Id.* at 9. During the pendency of the HCAPS litigation, the Court converted the bankruptcy cases to chapter 7. Allison Byman, the newly appointed chapter 7 trustee, asked Strasburger & Price to consider representing the estate on a contingency fee basis. Ultimately, she decided not to continue the employment of Strasburger & Price. (ECF No. 25 at 3). Byman filed a motion to compromise the HCAPS litigation on November 5, 2012. (Case No. 12-34546; ECF No. 341). The motion to

compromise repeated the allegations that the intent of the parties was to create a partnership for a single business venture. *Id.* at 5. The Court granted the motion on November 26, 2012.

Prior to the termination of its involvement in the HCAPS litigation, Strasburger & Price attorneys prepared an internal memorandum addressed to the Strasburger management team seeking permission to take the case on a contingency fee basis. (ECF No. 23). The memorandum contained the Strasburger attorneys' mental impressions of the various causes of action asserted against the HCAPS entities, including whether Sadler and HCAPS had entered into a general partnership.

Independent of the HCAPS litigation, Byman commenced an adversary proceeding against Angelica Textile Services, Inc. on June 13, 2014. (ECF No. 1). Byman sought to set aside certain payments made by Sadler to Angelica during the ninety-day preference period. During discovery, Angelica served a subpoena on Strasburger & Price seeking production of the internal memorandum.[1] Angelica sought the memorandum in support of its theory that if Sadler and HCAPS were in fact involved in a partnership, then any transfers made to Angelica could be considered transfers of partnership property rather than property of the estate.

Byman moved to quash the subpoena on the grounds that it violated the work-product privilege and because Angelica failed to provide a reasonable time to comply with its demands. (ECF No. 22). Strasburger & Price also filed an objection. (ECF No. 23). Angelica filed a response to the motion to quash making three main arguments: (1) the memorandum does not qualify as work product because it was made in the firm's economic self-interest rather than to benefit a client; (2) the memorandum does not qualify as work product because it was prepared

---

[1] Although the memorandum was internal, Strasburger & Price referenced the memorandum in its fee application. (Case No. 12-34546; ECF No. 405 at 27).

in connection with a prior unrelated lawsuit; and (3) even if the memorandum is considered work product, Angelica has a substantial need for the materials to prepare its case.

The Court held a hearing on the motion to quash on February 2, 2015.  At the hearing, Robert O'Boyle, a Strasburger & Price attorney, testified that he and another attorney named Clint Rosenthal prepared the memorandum.   O'Boyle testified that the memorandum was prepared to comply with Byman's request that Strasburger continue to represent the Sadler Estate in the HCAPS litigation on a contingency fee basis.   He further testified that the memorandum contained the mental impressions and legal conclusions of the attorneys who prepared the document.  On cross-examination, O'Boyle acknowledged that Strasburger & Price represented Sadler during the negotiation of the Asset Purchase Agreement and Affiliation Agreement.   Following the conclusion of the hearing, the Court took the matter under advisement.

## Analysis

*The Work-Product Doctrine*

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that, "on a timely motion, the court . . . must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies. . . ."  In turn, Rule 26(b)(3)(A) states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ."  Fed. R. Civ. P. 26(b)(3)(A).  Such documents may be discoverable, however, if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  *Id.*

It is important to note that the work-product doctrine differs from the attorney-client privilege. *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). The work product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). While the attorney-client privilege exists to protect confidential communications and maintain the sanctity of the attorney-client relationship, the work-product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Id.* (citing *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). Documents prepared by an attorney, for example, containing her mental impressions of a meeting with a witness would not be protected by the attorney-client privilege. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947). Nevertheless, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." *Id.* at 510.

The burden of establishing that a document is work product is on the party who asserts the claim. *Hodges, Grant & Kaufmann v. IRS*, 768, F.2d 719, 721 (5th Cir. 1985). Once a court determines that a document is work product, however, the burden shifts "to the party who desires discovery of work product material to satisfy the court that it should have this discovery." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2023 (3d ed. 2010); *Hodges*, 768 F.2d at 721. The party seeking to establish work product must show: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; and (3) the materials were prepared by or for a party's representative; (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains mental impressions, conclusions, opinions, or legal theories

of an attorney or other representative of a party." *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

*The Strasburger & Price Memorandum Constituted Attorney Work Product*

Angelica does not dispute that the memorandum is a document or tangible thing.  Rather, it contends that the document could not have been prepared in anticipation of litigation or for trial because it was prepared only for the firm's economic self-interest.   Angelica reads a requirement into the Federal Rules that a document must be prepared "for the primary purpose of assisting [the client] in the continued prosecution of the [litigation]."  This is a misstatement of the relevant law.

In dicta, the Fifth Circuit may have implied a "primary motivating purpose test" with regards to whether a document was created in anticipation of future litigation.  In *United States v. Davis*, the Fifth Circuit stated:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in future litigation.

636 F.2d 1028, 1040 (5th Cir. 1981).  Because the court had already determined the document in question was not work product, the language quoted above is dicta.  *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998).  Moreover, it is immediately apparent that *Davis* was intended to *broaden* the types of materials that could be considered work product by rejecting the "imminent" litigation approach.  The Fifth Circuit did not intend to then impose a different limit on the doctrine by requiring a showing that the "primary motivating purpose" of the materials in question was to aid in litigation.

The proper test for whether a document can be considered work product is whether it was created "because of" the prospect of litigation. In *United States v. Adlman*, the Second Circuit considered a memorandum prepared by the former accounting firm Arthur Andersen.[2] A corporation asked Andersen to analyze the tax implications of a proposed restructuring. The resultant memorandum contained discussion of statutory provisions, IRS regulations, prior judicial decisions, and made predictions about the likely outcome of litigation. The court held that the memorandum was work product, reasoning that:

> A document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).

*Id.* at 1195.

Numerous courts of appeals have specifically adopted the "because of" test. *See, e.g.*, *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 67 (1st Cir. 2002); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1994); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987); *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010); *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983); *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979). The "because of" test has also been applied by district courts within the Fifth Circuit. *See, e.g.*, *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 670 (S.D. Tex. 1990); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004); *Kansas City Southern Ry. Co. v. Nichols*

---

[2] The memorandum was prepared by an attorney working for Andersen, not an accountant. The work product doctrine generally does not extend to accounting professionals.

*Constr. Co.*, 2007 WL 1792352 (E.D. La. June 20, 2007). Accordingly, the Court will apply the "because of" test to determine whether the memorandum should be considered work product.

There can be no question that the Strasburger & Price memorandum was created because of the HCAPS litigation. Robert O'Boyle testified that Byman requested Strasburger & Price to continue representing the estate on a contingency basis. The firm then prepared the memorandum to determine whether it was economically feasible to comply with that request. In general terms, the memorandum contains discussions of the asserted causes of action, prior judicial decisions examining the issue, and the attorneys' impressions regarding the probability of success for each cause of action. This is strikingly similar to the memorandum in *Adlman*, with the noted exception being that the document was created to aid in the firm's business decision, rather than the client. Nevertheless, "but for" the HCAPS litigation, the memorandum would not have been prepared, regardless of who ultimately made the business decision. Moreover, unlike *Adlman*, Strasburger & Price prepared the memorandum as a result of currently ongoing litigation, rather than simply the *possibility* of future litigation. The trustee asked for potential assistance in prosecuting a lawsuit, and Strasburger & Price responded. Plainly, the memorandum was prepared because of the HCAPS litigation.

Angelica's second argument for why the memorandum should not be considered work product is that work product generated in the context of one lawsuit should not be treated as work product in a subsequent lawsuit. Several courts have held or suggested that documents can only be treated as work product in subsequent litigation if the two lawsuits are "closely related." The Third Circuit suggested that the doctrine should only apply to closely related litigation, although it declined to so hold expressly. *See In re Grand Jury Proceedings*, 604 F.2d 798, 803-04 (3d Cir. 1979). Angelica cites to several district court decisions which have expressly held

that the two lawsuits must be closely related.  *See, e.g.*, *Cosmetic Warriors Ltd. v. Lush Day Spa, LLC*, 2013 WL 5536048 (D.N.J. Oct. 4, 2013); *Levingston v. Allis-Chambers Corp.*, 109 F.R.D. 546, 553 (S.D. Miss. 1985).  The Fifth Circuit has not directly addressed the issue, but it has noted that the "broader" view appears to be that the doctrine applies to *all* subsequent litigation, not just closely related cases.  *In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994).

Applying the work-product doctrine only to subsequent litigation which is closely related to the original litigation appears to contradict the plain language of the Federal Rules.  The appropriate starting point for analyzing the doctrine is of course Rule 26 itself, which states "a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  The requirement that the subsequent litigation be related is not contained within Rule 26.  Indeed, the Supreme Court has noted in dicta that "the literal language [of Rule 26] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation."  *FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983) (emphasis in original).  Although not controlling, dicta of the Supreme Court certainly carries great authority.  *See United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980) (noting that, compared to other dicta, "[d]icta of the Supreme Court are, of course, another matter").

Furthermore, the majority of circuit courts to have directly decided the issue apply the work-product doctrine to all subsequent litigation, related or not.  *See, e.g.*, *Frontier Refining, Inc. v. Gorman Rupp-Co., Inc.*, 136 F.3d 695, 703 (10th Cir. 1998); *United States v. Pfizer, Inc.*

*(In re Murphy)*, 560 F.2d 326, 335 (8th Cir. 1977); and *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484-85 n.15 (4th Cir. 1973).  For the above reasons, the Court finds that the work-product doctrine applies to *all* subsequent litigation.

As to the fourth element of opinion work product, the Court has conducted *in camera* review of the Strasburger & Price memorandum.  The facts contained within the memorandum are mostly recitals of the facts spelled out in Sadler's complaint.  However, the document is replete with the mental impressions and opinions of the attorneys who created it.  For example, the memorandum delineates the elements of partnership formation under Texas law and gives an opinion as to which facts tend to support the existence of a partnership and which facts cut against a partnership.  It also estimates the chance of success in establishing a breach of fiduciary duty based on the existence of a partnership.  Because the document contains mental impressions, opinions, and legal theories of an attorney, Byman has established that the memorandum constitutes opinion work product.

The Strasburger & Price memorandum is a document prepared in anticipation of a trial by a party's representative.  Accordingly, it is protected from discovery under Fed. R. Civ. P. 26(b)(3)(A).  Because the memorandum is opinion work product, the burden shifts to Angelica to demonstrate that it has substantial need for the materials.

*Angelica Has Not Met Its Burden to Show That the Memorandum Is Discoverable*

Angelica must demonstrate that it has a substantial need for the materials and cannot obtain a substantial equivalent without undue hardship.  At the February 2, 2015, counsel for Angelica argued that Angelica had substantial need for the memorandum because the Strasburger & Price attorneys participated in the negotiations with HCA and HCAPS and may have important insight into whether a partnership was formed.  He further argued that if Angelica

could not obtain the memorandum it would suffer undue hardship because it would then be forced to depose witnesses about events that took place more than three years ago. Finally, counsel argued that without the memorandum asserting the partnership defense to the preference action could potentially be too cost-prohibitive to pursue.

As a general rule, the fact that a deposition may be expensive is not sufficient to compel discovery. 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2025 (3d ed. 2010). "[I]n the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product." *In re Int'l Sys. and Controls Corp. Sec. Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982). The party seeking discovery may demonstrate undue hardship if witnesses cannot recall the events in question, or are unavailable. *Id*. But broad unsubstantiated assertions of unavailability or faulty memory are not sufficient. *Id.* (citing *United States v. Chatham City Corp.*, 72 F.R.D. 640, 644 (S.D. Ga. 1976). The mere lapse of time may be sufficient to justify the production of materials otherwise protected by work product, although this has almost exclusively been applied only to statements of witnesses taken shortly after an accident. *See* Wright & Miller, *supra*, § 2025; *Southern Ry. Co. v. Lanham*, 403 F.2d 119, 130-31 (5th Cir. 1968).

In addition, many courts have delineated a clear distinction between fact work product, which may be discovered upon a showing of substantial need, and opinion work product, which enjoys heightened protections. The Fourth Circuit has even held that opinion work product is absolutely protected and never subject to discovery. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 734 (4th Cir. 1973) ("[N]o showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions, or legal theories."). While most other circuits examining the

issue seem to agree that the Fourth Circuit's interpretation goes too far, there is a consensus that opinion work product can be turned over only in very limited circumstances.  *See, e.g.*, *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("We agree with several courts and commentators that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for material is compelling."); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) ("Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.").

The Fifth Circuit similarly requires a heightened showing to justify the disclosure of opinion work product.   In *Southern Railway Co. v. Lanham*, the court considered whether accident reports containing the mental impressions of railroad employees investigating the accident should be turned over.  It held that, "the discovery of those portions of the documents reflecting the mental processes and impressions of claim agents or investigators should be conditioned upon a strong showing of 'necessity or justification [or] 'hardship or injustice.' . . . We think . . . that the potentially adverse impact that may result from disclosure of the opinions and evaluations in question is sufficient to warrant the requirement of a special showing for their disclosure."  403 F.2d 119, 132 (5th Cir. 1968).[3]  *See also Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 585 (finding that opinion work product is only discoverable under limited circumstances).

Angelica has raised concerns about the degraded memory of potential witnesses after three years but has failed to point to a specific instance of an unavailable witness or a witness

---

[3] Although *Lanham* was issued before the 1970 codification of the *Hickman v. Taylor* work-product doctrine in Rule 26(b)(3)(A), it still may be considered valid law.  "[P]re-1970 cases must be evaluated with discrimination and care, but on the whole the rule was a codification of a doctrine rather than a change in a doctrine."  Wright & Miller, *supra* § 2023.

who cannot recall the events in question.  Robert O'Boyle, the Strasburger & Price attorney who prepared the memorandum, has already testified regarding the memorandum and appeared to have no difficulty with his memory of events.  Reviewing the memorandum would obviously be "helpful" to Angelica's counsel in deposing O'Boyle or another Strasburger witness.  But the standard for turning over work product is not whether the materials are merely "helpful."  Angelica has not made a showing of compelling or extraordinary need that would justify disclosure of the memorandum.  *See Smith*, 168 F.R.D. at 585.  Angelica's claim that witnesses will have difficulty remembering the events in question and that the cost of depositions will be prohibitive is insufficient to compel the disclosure of opinion work product.  Byman's motion to quash the subpoena is granted.

### Conclusion

The Court will issue an order consistent with this memorandum opinion.

SIGNED **April 17, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE