## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Sadler Clinic, PLLC, | § | Case No.:  12-34546 |
| | § | |
| and | § | |
| | § | |
| Montgomery County | § | Case No.: 12-34547 |
| Management Company, LLC | § | |
| | § | Substantively Consolidated |
| Debtors | § | Under Case No. 12-34546 |
| | § | (Chapter 7) |
| ---------------------------------------------------§ | | |
| Allison D. Byman, | § | |
| Chapter 7 Trustee | § | JURY TRIAL DEMANDED |
| | § | |
| v. | § | Adversary No. 14-03231 |
| | § | |
| Angelica Textile Services, Inc. | § | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY (20) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

Allison D. Byman, Chapter 7 Trustee for the above-captioned substantively consolidated bankruptcy estate, Plaintiff in the above–captioned adversary proceeding (the "***Trustee***"), files this *Motion for Summary Judgment*, and shows:

## I. RELIEF REQUESTED

1.     The Trustee respectfully requests the Court grant this Motion for Summary Judgment in favor of the Plaintiff and against Angelica Textile Services, Inc. ("***Angelica***"), in connection with the avoidance and recovery of certain preferential transfers.

2.     Alternatively, if this Motion is not granted for all the relief requested herein, the Trustee requests the Court to examine the evidence before it, ascertain what material facts are actually in dispute, and thereupon grant a partial summary judgment or render an order specifying those facts that appear without substantial controversy and direct such other proceedings as are just.

## II. JURISDICTION

3.     A proceeding seeking avoidance and recovery of preferential transfers raises a core matter over which this Court has jurisdiction to enter a final order.   28 U.S.C. §§ 157(b)(2)(F) and 1334.

## III. SUMMARY JUDGMENT STANDARD

4.     Federal Rule of Civil Procedure 56(c), as made applicable to this proceeding by Bankruptcy Rule 7056, provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Summary judgment is proper if the moving party can show (1) "the absence of a genuine issue of

material fact on an essential element;" or (2) they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c).

5.        The movant has the initial burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party.  *Id.* at 330.  Once the moving party satisfies that burden, the burden shifts to the nonmoving party to present some evidence of a genuine issue of material fact for trial by showing evidence as to each element that could lead a rational trier of fact to find for the nonmoving party.  *Id.* The nonmoving party cannot satisfy its burden with conclusory statements, speculation and unsubstantiated assertions.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  A mere scintilla of evidence supporting the nonmoving party's position is insufficient to preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248; *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).  "Where the record as a whole could not lead a rational trier of fact to find for [Defendant], there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

6.        In this adversary, the Trustee seeks to recover preferential transfers under 11 U.S.C. § 547.  The Trustee bears the burden of proving avoidability of the transfer.  11 U.S.C. § 547(b), (g).  If the Trustee carries this burden, Angelica then bears the burden of proving an exception to such preference.  11 U.S.C. § 547(c).

### IV. SUMMARY JUDGMENT EVIDENCE

7.        The Trustee submits the following evidence:

| | |
|---|---|
| **Appendix 1** | Certified copy of Sadler Clinic PLLC Chapter 11 Bankruptcy Petition (the "***Petition***"). |
| **Appendix 2** | Certified copy of the Trustee's *Complaint to Avoid Transfers Pursuant to 11 U.S.C. § 547, or Alternatively 11* |

*U.S.C. § 548, and to Recover Such Transfers Pursuant to 11 U.S.C. § 550* (the "***Complaint***").

**Appendix 3**    Certified copy of [*Angelica's*] *Answer and Defenses to the Trustee's Complaint to Avoid Transfers Pursuant to 11 U.S.C. § 547, or Alternatively 11 U.S.C. § 548, and to Recover Such Transfers Pursuant to 11 U.S.C. § 550* (the "***Answer***").

**Appendix 4**    [*Trustee's*] *First (i) Request for Admissions; (ii) Interrogatories; and (iii) Demand for Production of Documents to Defendant Pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure*, including the following exhibits (53 pages) (the "***Trustee's Request for Discovery***"):

**Exhibit 1**    Angelica Textile Services' Consolidated Invoice # 8200062674, issued to Sadler Clinic Conroe, dated December 12, 2011 ("***Invoice 2674***");

**Exhibit 2**    Angelica Textile Services' Consolidated Invoice # 8200063021, issued to Sadler Clinic Conroe, dated December 17, 2011 ("***Invoice 3021***");

**Exhibit 3**    Angelica Textile Services' Consolidated Invoice # 8200067176, issued to Sadler Clinic Conroe, dated March 10, 2012 ("***Invoice 7176***");

**Exhibit 4**    Angelica Textile Services' Consolidated Invoice # 8200063352, issued to Sadler Clinic Conroe, dated December 24, 2011 ("***Invoice 3352***");

**Exhibit 5**    Angelica Textile Services' Consolidated Invoice # 8200063712, issued to Sadler Clinic Conroe, dated December 31, 2011 ("***Invoice 3712***");

**Exhibit 6**    Angelica Textile Services' Consolidated Invoice # 8200067530, issued to Sadler Clinic Conroe, dated March 17, 2012 ("***Invoice 7530***");

**Exhibit 7**    Angelica Textile Services' Consolidated Invoice # 8200064029, issued to Sadler Clinic Conroe, dated January 8, 2012 ("***Invoice 4029***");

**Exhibit 8** Angelica Textile Services' Consolidated Invoice # 8200064383, issued to Sadler Clinic Conroe, dated January 14, 2012 ("***Invoice 4383***");

**Exhibit 9** Angelica Textile Services' Consolidated Invoice # 8200067864, issued to Sadler Clinic Conroe, dated March 24, 2012 ("***Invoice 7864***");

**Exhibit 10** Angelica Textile Services' Consolidated Invoice # 8200064724, issued to Sadler Clinic Conroe, dated January 21, 2012 ("***Invoice 4724***");

**Exhibit 11** Angelica Textile Services' Consolidated Invoice # 8200065068, issued to Sadler Clinic Conroe, dated January 28, 2012 ("***Invoice 5068***");

**Exhibit 12** Angelica Textile Services' Consolidated Invoice # 8200068189, issued to Sadler Clinic Conroe, dated March 31, 2012 ("***Invoice 8189***");

**Exhibit 13** Angelica Textile Services' Consolidated Invoice # 8200065744, issued to Sadler Clinic Conroe, dated February 11, 2012 ("***Invoice 5744***");

**Exhibit 14** Angelica Textile Services' Consolidated Invoice # 8200068523, issued to Sadler Clinic Conroe, dated April 7, 2012 ("***Invoice 8523***");

**Exhibit 15** Angelica Textile Services' Consolidated Invoice # 8200068854, issued to Sadler Clinic Conroe, dated April 14, 2012 ("***Invoice 8854***");

**Exhibit 16** Angelica Textile Services' Consolidated Invoice # 8200069173, issued to Sadler Clinic Conroe, dated April 21, 2012 ("***Invoice 9173***").

**Appendix 5** Defendant Angelica Textile Services, Inc.'s *First Amended Responses and Objections to Plaintiff's First (i) Request for Admissions; (ii) Interrogatories; and (iii) Demand for Production of Documents to Defendant* (50 pages) (the "***Angelica's Responses to Discovery Requests***").

**Appendix 6** Affidavit of Bryan Abraham, Custodian of Business Records of Woodforest National Bank, including the following the exhibits (the "***Signature Card Affidavit***"):

| | | |
|---|---|---|
| | **Exhibit 1** | Signature Card for account XX9783 at Woodforest National Bank (2 pages) (the "***Signature Card***"). |
| **Appendix 7** | | Affidavit of Bryan Abraham, Custodian of Business Records of Woodforest National Bank, including the following the exhibits (the "***Bank Statement Affidavit***"): |
| | **Exhibit 1** | Bank Statement for bank account number XX9783 at Woodforest National Bank for the period of March 1, 2012 through March 31, 2012 (18 pages) (the "***March Statement***"); and |
| | **Exhibit 2** | Bank Statement for bank account number XX9783 at Woodforest National Bank for the period of April 1, 2012 through April 30, 2012 (18 pages) (the "***April Statement***"). |
| **Appendix 8** | | Affidavit of Allison D. Byman, Chapter 7 Trustee (the "***Trustee's Affidavit***"). |
| **Appendix 9** | | Certified copy of Sadler Clinic PLLC's *Statement of Financial Affairs* (the "***SOFA***"). |

## V. UNDISPUTED FACTS

8.    On June 15, 2012 (the "***Petition Date***"), Sadler Clinic, PLLC ("***Sadler***") and Montgomery County Management Company, LLC ("***MCMC***") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

9.    On August 2, 2012, the Court converted the cases to Chapter 7 of the Bankruptcy Code.  Thereafter, Allison D. Byman was appointed Chapter 7 Trustee to administer the assets of the bankruptcy estates.

10.    On September 16, 2013, the Court granted the Trustee's *Motion to Substantively Consolidate the Debtors' Bankruptcy Estates* [Main Case Docket Nos. 468 & 474] thereby substantively consolidating the two estates for all intents and purposes.

**A.      The First Transfer – $28,074.57**

11.     Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

      i.     Invoice 2674 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,433.75 for services rendered prior to December 12, 2011.  (Appendix 4, Exhibit 1).

      ii.     Invoice 3021 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,534.55 is for services rendered prior to December 17, 2011.  (Appendix 4, Exhibit 2).

      iii.     Invoice 7176 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,106.27 is for services rendered prior to March 10, 2012.  (Appendix 4, Exhibit 3).

12.     On March 19, 2012, an electronic transfer of funds totaling $28,074.57 (the "*First Transfer*") was made from the bank account ending 9783.  (Appendix 7, Exhibit 1, p.14 of 18).

13.     The bank account ending in 9783 is in the name of Sadler Clinic PLLC. (Appendix 6, Exhibit 1).

14.     The First Transfer was made for, or on account of the debt reflected on Invoice 2674, Invoice 3021 and Invoice 7176.  (Appendix 5, Exhibit 2, p.10).

15.     Angelica admits that it received the First Transfer.  (Appendix 3 ¶ 10).

16.     Angelica admits that the First Transfer was credited to its bank account. (Appendix 5, p.9).

17.     Angelica admits that the First Transfer was to or for its benefit.  (Appendix 5, p.9).

18.     Angelica admits that it was the initial transferee of the First Transfer.  (Appendix 5, p.11).

**B.    The Second Transfer – $27,451.67**

19.    Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

    i.    Invoice 3352 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,300.96 is for services rendered prior to December 24, 2011.  (Appendix 4, Exhibit 4).

    ii.    Invoice 3712 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,959.21 is for services rendered prior to December 31, 2011.  (Appendix 4, Exhibit 5).

    iii.    Invoice 7530 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,191.50 is for services rendered prior to March 17, 2012.  (Appendix 4, Exhibit 6).

20.    On March 26, 2012, an electronic transfer of funds totaling $27,451.67 (the "*Second Transfer*") was made from the bank account ending 9783.  (Appendix 7, Exhibit 1, p.15 of 18).

21.    The Second Transfer was made for, or on account of the debt reflected on Invoice 3352, Invoice 3712 and Invoice 7530.  (Appendix 5, p.14).

22.    Angelica admits that it received the Second Transfer.  (Appendix 3 ¶ 11).

23.    Angelica admits that the Second Transfer was credited to its bank account. (Appendix 5, p.13).

24.    Angelica admits that the Second Transfer was to or for its benefit.  (Appendix 5, p.13).

25.    Angelica admits that it was the initial transferee of the Second Transfer. (Appendix 5, p.15).

**C.     The Third Transfer – $25,159.71**

26.     Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

    i.    Invoice 4029 addressed to "Customer" Sadler Clinic Conroe in the amount of $7,356.82 is for services rendered prior to January 8, 2012.  (Appendix 4, Exhibit 7).

    ii.    Invoice 4383 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,239.53 is for services rendered prior to January 14, 2012.  (Appendix 4, Exhibit 8).

    iii.    Invoice 7864 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,563.36 is for services rendered prior to March 24, 2012.  (Appendix 4, Exhibit 9).

27.     On April 2, 2012, an electronic transfer of funds totaling $25,159.71 (the "***Third Transfer***") was made from the bank account ending 9783.  (Appendix 7, Exhibit 2, p.13 of 18).

28.     The Third Transfer was made for, or on account of the debt reflected on Invoice 4029, Invoice 4383 and Invoice 7864.  (Appendix 5, p.18).

29.     Angelica admits that it received the Third Transfer.  (Appendix 3 ¶ 12).

30.     Angelica admits that the Third Transfer was credited to its bank account. (Appendix 5, p.17).

31.     Angelica admits that the Third Transfer was to or for its benefit.  (Appendix 5, p.17).

32.     Angelica admits that it was the initial transferee of the Third Transfer.  (Appendix 5, p.19).

**D.     The Fourth Transfer – $27,223.96**

33.     Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

i.      Invoice 4724 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,678.48 is for services rendered prior to January 21, 2012.  (Appendix 4, Exhibit 10).

ii.     Invoice 5068 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,963.77 is for services rendered prior to January 28, 2012.  (Appendix 4, Exhibit 11).

iii.    Invoice 8189 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,581.71 is for services rendered prior to March 31, 2012.  (Appendix 4, Exhibit 12).

34.     On April 9, 2012, an electronic transfer of funds totaling $27,223.96 (the "*Fourth Transfer*") was made from the bank account ending 9783.  (Appendix 7, Exhibit 2, p.13 of 18).

35.     The Fourth Transfer was made for, or on account of the debt reflected on Invoice 4724, Invoice 5068 and Invoice 8189.  (Appendix 5, p.22).

36.     Angelica admits that it received the Fourth Transfer.  (Appendix 3 ¶ 13).

37.     Angelica admits that the Fourth Transfer was credited to its bank account. (Appendix 5, p.21).

38.     Angelica admits that the Fourth Transfer was to or for its benefit.  (Appendix 5, p.21).

Angelica admits that it was the initial transferee of the Fourth Transfer.  (Appendix 5, p.23).

**E.      The Fifth Transfer – $15,798.78**

39.     Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

10

       i.     Invoice 5744 addressed to "Customer" Sadler Clinic Conroe in the amount of $7,656.34 is for services rendered prior to February 11, 2012.  (Appendix 4, Exhibit 13).

       ii.    Invoice 8523 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,142.44 is for services rendered prior to April 7, 2012.  (Appendix 4, Exhibit 14).

40. On April 16, 2012, an electronic transfer of funds totaling $15,798.78 (the "***Fifth Transfer***") was made from the bank account ending 9783.  (Appendix 7, Exhibit 2, p.14 of 18).

41. The Fifth Transfer was made for, or on account of the debt reflected on Invoice 5744 and Invoice 8523.  (Appendix 5, p.26).

42. Angelica admits that it received the Fifth Transfer.  (Appendix 3 ¶ 14).

43. Angelica admits that the Fifth Transfer was credited to its bank account. (Appendix 5, p.25).

44. Angelica admits that the Fifth Transfer was to or for its benefit.  (Appendix 5, p.25).

45. Angelica admits that it was the initial transferee of the Fifth Transfer.  (Appendix 5, p.27).

**F.     The Sixth Transfer – $8,966.16**

46. Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

       i.     Invoice 8854 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,966.16 is for services rendered prior to April 14, 2012.  (Appendix 4, Exhibit 15).

47. On April 23, 2012, an electronic transfer of funds totaling $8,966.16 (the "***Sixth Transfer***") was made from the bank account ending 9783.  (Appendix 7, Exhibit 2, p.15 of 18).

48.     The Sixth Transfer was made for, or on account of the debt reflected on Invoice 8854.  (Appendix 5, p.30).

49.     Angelica admits that it received the Sixth Transfer.  (Appendix 3 ¶ 15).

50.     Angelica admits that the Sixth Transfer was credited to its bank account. (Appendix 5, p.29).

51.     Angelica admits that the Sixth Transfer was to or for its benefit.  (Appendix 5, p.29).

52.     Angelica admits that it was the initial transferee of the Sixth Transfer.  (Appendix 5, p.31).

**G.     The Seventh Transfer – $8,265.04**

53.     Prior to Sadler and MCMC filing for Chapter 7 bankruptcy on June 15, 2012, Angelica performed services for, and invoiced Sadler for such services as detailed below:

    i.     Invoice 9173 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,265.04 is for services rendered prior to April 22, 2012.  (Appendix 4, Exhibit 16).

54.     On April 30, 2012, an electronic transfer of funds totaling $8,265.04 (the "*Seventh Transfer*") was made from the bank account ending 9783.  (Appendix 7, Exhibit 2, p.15 of 18).

55.     The Seventh Transfer was made for, or on account of the debt reflected on Invoice 9173.  (Appendix 5, p.34).

56.     Angelica admits that it received the Seventh Transfer.  (Appendix 3 ¶ 16).

57.     Angelica admits that the Seventh Transfer was credited to its bank account. (Appendix 5, p.33).

58.     Angelica admits that the Seventh Transfer was to or for its benefit.  (Appendix 5, p.33).

59.     Angelica admits that it was the initial transferee of the Seventh Transfer. (Appendix 5, p.35).

## VI. ARGUMENT AND AUTHORITIES

**A.     Granting the Trustee's Motion for Summary Judgment is proper.**

60.     The Trustee re-alleges and incorporates all of the foregoing and ensuing allegations as if fully set forth herein at length.

61.     The Trustee moves for summary judgment on the 11 U.S.C. §§ 547(b) and 550(a) claims.

**I.       Summary judgment as to the 11 U.S.C. § 547(b) claims is proper.**

62.     To prevail on an 11 U.S.C. § 547(b) claim, the Trustee must establish for each transfer:

> [That Angelica received a] . . . transfer of an interest of the debtor in property –
>
> (1)     to or for the benefit of a creditor [Angelica];
> (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)     made while the debtor was insolvent;
> (4)     made on or within 90 days before the date of filing the petition;
> (5)     that enable such creditor [Angelica] to receive more than such creditor [Angelica] would receive if -
>         (a) the case were a case under chapter 7 of this title;
>         (b) the transfer had not been made; and
>         (c) such creditor [Angelica] received payment of such debt to the extent provided by the provisions of this title.

63.     As set forth in detail below, granting the Trustee's Motion for Summary Judgment on the 11 U.S.C. § 547(b) claims is proper because the below competent summary judgment evidence establishes each element for all seven transfers as a matter of law.

## II.     The Preferential Payments

**The First Transfer**

### (a)     Transfer of an Interest of the Debtor in Property.

64.     Under Texas law, the name on a bank account is prima facie proof of ownership of the account. *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 208 (Tex. App.–Houston [1st Dist] 2003, no pet.). Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds. *In re Southmark Corp.*,49 F.3d 1111, 1116–17 (5th Cir. 1995); *In re IFS Fin. Corp.*, 669 F.3d 255, 261–63 (Bankr. S.D. Tex. 2012).

65.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the First Transfer to Angelica was a transfer of an interest of Sadler in property:

    i.     Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC. (Appendix 6, Exhibit 1).

    ii.     The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, showing that an ACH in the amount of $28,074.57 cleared the account on March 19, 2012. (Appendix 7, Exhibit 1, p.14 of 18) (Appendix 4, Exhibit 1, Exhibit 2 and Exhibit 3).

    iii.     Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC. (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

**(b)    The First Transfer was for Angelica's Benefit.**

66.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the First Transfer to Angelica was a transfer for Angelica's benefit:

    i.    Angelica admits that the First Transfer was for Angelica's benefit.

> **REQUEST FOR ADMISSIONS NO. 20:** The First Transfer was to or for the benefit of Defendant.
>
> **RESPONSE:** Admit.  (Appendix 5, p.9).

**(c)    The First Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.**

67.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the First Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

    i.    Angelica admits that the First Transfer was on account of an antecedent debt.

> **REQUEST FOR ADMISSIONS NO. 23:** The First Transfer was made for, or on account of the debt reflected on Invoice 2674, Invoice 3021 and Invoice 7176.
>
> **RESPONSE:** Admit.  (Appendix 5, p.10).

    ii.    Invoice 2674, Invoice 2674 and Invoice 2674 on their face identify "Sadler Clinic Conroe" as the "Customer".

> 1.    Invoice 2674 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,433.75 is for services rendered prior to December 12, 2011.  (Appendix 4, Exhibit 1).
>
> 2.    Invoice 3021 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,534.55 is for services rendered prior to December 17, 2011.  (Appendix 4, Exhibit 2).
>
> 3.    Invoice 7176 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,106.27 is for services rendered prior to March 10, 2012.  (Appendix 4, Exhibit 3).

    iii.    The bank statement at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, showing that an ACH in the amount of $28,074.57 cleared the account on <u>March 19, 2012</u>.  (Appendix 7, Exhibit 1, p.15 of 18).

**(d)**    **The First Transfer was made while Sadler was insolvent.**

68.    The Trustee establishes as a matter of law that the First Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)**    **The First Transfer was made on or within 90 days before the date of filing the petition.**

69.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the First Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

    i.    The bank statement at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, <u>establishing that an ACH in the amount of $28,074.57 cleared the account on March 19, 2012</u>.  (Appendix 7, Exhibit 1, p.15 of 18).

    ii.    Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

    iii.    Additionally, Angelica admitted that the First Transfer was made within ninety (90) days before June 15, 2012:

> **COMPLAINT PARAGRAPH 28:** The Transfers [defined as the First Transfer, Second Transfer, Third Transfer, Fourth Transfer, Fifth Transfer, Sixth Transfer, and Seventy Transfer, collectively] were made on or within ninety (90) days before the Petition Date [defined as June 15, 2012]  (Appendix 2 ¶ 28).

> **ANSWER PARAGRAPH 28:**  Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint.  (Appendix 3 ¶ 28).

**(f)**    **The First Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

70.     By the following competent summary judgment evidence, the Trustee establishes as matter of law that the First Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

     i.    The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate. The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8). Therefore, the First Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**The Second Transfer**

    **(a)**    **Transfer of an Interest of the Debtor in Property.**

71.     Under Texas law, the name on a bank account is prima facie proof of ownership of the account. *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208. Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds. *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

72.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Second Transfer to Angelica was a transfer of an interest of Sadler in property:

    iv.    Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC. (Appendix 6, Exhibit 1).

    v.    The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, showing that an ACH in the amount of $27,451.67 cleared the account on March 26, 2012. (Appendix 7, Exhibit 1, p.15 of 18) (Appendix 4, Exhibit 4, Exhibit 5 and Exhibit 6).

vi.    Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

**(b)**    **The Second Transfer was for Angelica's Benefit.**

73.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Second Transfer to Angelica was a transfer for Angelica's benefit:

i.    Angelica admits that the Second Transfer was for Angelica's benefit.

> **REQUEST FOR ADMISSIONS NO. 29:** The Second Transfer was to or for the benefit of Defendant.
>
> **RESPONSE:** Admit.  (Appendix 5, p.13).

**(c)**    **The Second Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.**

74.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Second  Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

i.    Angelica admits that the Second Transfer was on account of an antecedent debt.

> **REQUEST FOR ADMISSIONS NO. 32:** The Second Transfer was made for, or on account of the debt reflected on Invoice 3352, Invoice 3712 and Invoice 7530.
>
> **RESPONSE:** Admit.  (Appendix 5, p.14).

iv.    Invoice 3352, Invoice 3712 and Invoice 7530 on their face identify "Sadler Clinic Conroe" as the "Customer".

> 1.    Invoice 3352 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,300.96 is for services rendered prior to December 24, 2011.  (Appendix 4, Exhibit 4).

2. Invoice 3712 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,959.21 is for services rendered prior to December 31, 2011.  (Appendix 4, Exhibit 5).

3. Invoice 7530 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,191.50 is for services rendered prior to March 17, 2012.  (Appendix 4, Exhibit 6).

v. The bank statement at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, showing that an ACH in the amount of $27,451.67 cleared the account on <u>March 26, 2012</u>.  (Appendix 7, Exhibit 1, p.15 of 18).

**(d)    The Second Transfer was made while Sadler was insolvent.**

75.    The Trustee establishes as a matter of law that the Second Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)    The Second Transfer was made on or within 90 days before the date of filing the petition.**

76.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the Second Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

i. The bank statement at Woodforest National Bank for account XX9783 for the period of March 1, 2012 through March 31, 2012, <u>establishing that an ACH in the amount of $27,451.67 cleared the account on March 26, 2012</u>.  (Appendix 7, Exhibit 1, p.15 of 18).

ii. Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

iii. Additionally, Angelica admitted that the Second Transfer was made within ninety (90) days before June 15, 2012:

**COMPLAINT PARAGRAPH 28:** The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).

> **ANSWER PARAGRAPH 28:**   Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint.  (Appendix 3 ¶ 28).

    **(f)**    **The Second Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

    77.    By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Second Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

> i.    The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate.  The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8).  Therefore, the Second Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**<u>The Third Transfer</u>**

    **(a)**    **Transfer of an Interest of the Debtor in Property.**

    78.    Under Texas law, the name on a bank account is prima facie proof of ownership of the account.  *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208.  Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds.  *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

    79.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Third Transfer to Angelica was a transfer of an interest of Sadler in property:

> i.    Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC.  (Appendix 6, Exhibit 1).

    ii.    The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $25,159.71 cleared the account on April 2, 2012.  (Appendix 7, Exhibit 2, p.13 of 18) (Appendix 4, Exhibit 7, Exhibit 8 and Exhibit 9).

    iii.    Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

    **(b)**    **The Third Transfer was for Angelica's Benefit.**

80.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Third Transfer to Angelica was a transfer for Angelica's benefit:

    i.    Angelica admits that the Third Transfer was for Angelica's benefit.

        **REQUEST FOR ADMISSIONS NO. 38:** The Third Transfer was to or for the benefit of Defendant.

        **RESPONSE:** Admit.  (Appendix 5, p.17).

    **(c)**    **The Third Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.**

81.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Third Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

    i.    Angelica admits that the Third Transfer was on account of an antecedent debt.

        **REQUEST FOR ADMISSIONS NO. 41:** The Third Transfer was made for, or on account of the debt reflected on Invoice 4029, Invoice 4383 and Invoice 7864.

        **RESPONSE:** Admit.  (Appendix 5, p.18).

vi.    Invoice 4029, Invoice 4383 and Invoice 7864 on their face identify "Sadler Clinic Conroe" as the "Customer".

1.  Invoice 4029 addressed to "Customer" Sadler Clinic Conroe in the amount of $7,356.82 is for services rendered prior to January 8, 2012.  (Appendix 4, Exhibit 7).

2.  Invoice 4383 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,239.53 is for services rendered prior to January 14, 2012.  (Appendix 4, Exhibit 8).

3.  Invoice 7864 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,563.36 is for services rendered prior to March 24, 2012.  (Appendix 4, Exhibit 9).

vii.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $25,159.71 cleared the account on April 2, 2012.  (Appendix 7, Exhibit 2, p.13 of 18).

**(d)    The Third Transfer was made while Sadler was insolvent.**

82.    The Trustee establishes as a matter of law that the Third Transfer was made while

Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)    The Third Transfer was made on or within 90 days before the date of filing the petition.**

83.    By the following competent summary judgment evidence, the Trustee establishes

as a matter of law, the Third Transfer was made on or within ninety (90) days before the date of

the filing of the bankruptcy petition on June 15, 2012:

i.     The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, establishing that an ACH in the amount of $25,159.71 cleared the account on April 2, 2012.  (Appendix 7, Exhibit 2, p.13 of 18).

ii.    Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

iii.   Additionally, Angelica admitted that the Third Transfer was made within ninety (90) days before June 15, 2012:

COMPLAINT PARAGRAPH 28: The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).

ANSWER PARAGRAPH 28:  Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint.  (Appendix 3 ¶ 28).

(f)     **The Third Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

84.     By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Third Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

i.     The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate.  The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8).  Therefore, the Third Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**The Fourth Transfer**

(a)     **Transfer of an Interest of the Debtor in Property.**

85.     Under Texas law, the name on a bank account is prima facie proof of ownership of the account.  *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208.  Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds.  *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

86.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fourth Transfer to Angelica was a transfer of an interest of Sadler in property:

23

    iv.    Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC.  (Appendix 6, Exhibit 1).

    v.    The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $27,223.96 cleared the account on April 9, 2012.  (Appendix 7, Exhibit 2, p.13 of 18) (Appendix 4, Exhibit 10, Exhibit 11 and Exhibit 12).

    vi.    Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

**(b)**    **The Fourth Transfer was for Angelica's Benefit.**

87.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fourth Transfer to Angelica was a transfer for Angelica's benefit:

    i.    Angelica admits that the Fourth Transfer was for Angelica's benefit.

        **REQUEST FOR ADMISSIONS NO. 47:** The Fourth Transfer was to or for the benefit of Defendant.

        **RESPONSE:** Admit.  (Appendix 5, p.21).

**(c)**    **The Fourth Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.**

88.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fourth Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

    i.    Angelica admits that the Fourth Transfer was on account of an antecedent debt.

        **REQUEST FOR ADMISSIONS NO. 50:** The Fourth Transfer was made for, or on account of the debt reflected on Invoice 4724, Invoice 5068 and Invoice 8189.

**RESPONSE:** Admit.  (Appendix 5, p.22).

ii.   Invoice 4724, Invoice 5068 and Invoice 8189 on their face identify "Sadler Clinic Conroe" as the "Customer".

1.   Invoice 4724 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,678.48 is for services rendered prior to January 21, 2012.  (Appendix 4, Exhibit 10).

2.   Invoice 5068 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,963.77 is for services rendered prior to January 28, 2012.  (Appendix 4, Exhibit 11).

3.   Invoice 8189 addressed to "Customer" Sadler Clinic Conroe in the amount of $9,581.71 is for services rendered prior to March 31, 2012.  (Appendix 4, Exhibit 12).

iii.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $27,223.96 cleared the account on April 9, 2012.  (Appendix 7, Exhibit 2, p.13 of 18).

**(d)   The Fourth Transfer was made while Sadler was insolvent.**

89.   The Trustee establishes as a matter of law that the Fourth Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)   The Fourth Transfer was made on or within 90 days before the date of filing the petition.**

90.   By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the Fourth Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

i.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, establishing that an ACH in the amount of $27,223.96 cleared the account on April 9, 2012.  (Appendix 7, Exhibit 2, p.13 of 18).

ii.     Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

iii.    Additionally, Angelica admitted that the Fourth Transfer was made within ninety (90) days before June 15, 2012:

> **COMPLAINT PARAGRAPH 28:** The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).

> **ANSWER PARAGRAPH 28:** Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint. (Appendix 3 ¶ 28).

**(f)     The Fourth Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

91.     By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Fourth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

i.      The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate. The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8). Therefore, the Fourth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**The Fifth Transfer**

**(a)     Transfer of an Interest of the Debtor in Property.**

92.     Under Texas law, the name on a bank account is prima facie proof of ownership of the account. *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208. Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds. *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

93.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fifth Transfer to Angelica was a transfer of an interest of Sadler in property:

i.   Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC.  (Appendix 6, Exhibit 1).

ii.  The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $15,798.78 cleared the account on April 16, 2012.  (Appendix 7, Exhibit 2, p.14 of 18) (Appendix 4, Exhibit 13 and Exhibit 14).

iii. Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

**(b)     The Fifth Transfer was for Angelica's Benefit.**

94.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fifth Transfer to Angelica was a transfer for Angelica's benefit:

i.   Angelica admits that the Fifth Transfer was for Angelica's benefit.

**REQUEST FOR ADMISSIONS NO. 56:** The Fifth Transfer was to or for the benefit of Defendant.

**RESPONSE:** Admit.  (Appendix 5, p.25).

**(c)     The Fifth Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.**

95.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Fifth Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

     i.   Angelica admits that the Fifth Transfer was on account of an antecedent debt.

> **REQUEST FOR ADMISSIONS NO. 59:** The Fifth Transfer was made for, or on account of the debt reflected on Invoice 5744 and Invoice 8523.
>
> **RESPONSE:** Admit.  (Appendix 5, p.26).

     ii.   Invoice 5744 and Invoice 8523 on their face identify "Sadler Clinic Conroe" as the "Customer".

> 1. Invoice 5744 addressed to "Customer" Sadler Clinic Conroe in the amount of $7,656.34 is for services rendered prior to February 11, 2012.  (Appendix 4, Exhibit 13).
>
> 2. Invoice 8523 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,142.44 is for services rendered prior to April 7, 2012. (Appendix 4, Exhibit 14).

     iii.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $15,798.78 cleared the account on <u>April 16, 2012</u>.  (Appendix 7, Exhibit 2, p.14 of 18).

**(d)    The Fifth Transfer was made while Sadler was insolvent.**

96.    The Trustee establishes as a matter of law that the Fifth Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)    The Fifth Transfer was made on or within 90 days before the date of filing the petition.**

97.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the Fifth Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

     i.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, <u>establishing that an ACH in the amount of $15,798.78 cleared the account on April 16, 2012</u>.  (Appendix 7, Exhibit 2, p.14 of 18).

     ii.   Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

      iii.    Additionally, Angelica admitted that the Fifth Transfer was made within ninety (90) days before June 15, 2012:

> **COMPLAINT PARAGRAPH 28:** The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).

> **ANSWER PARAGRAPH 28:** Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint. (Appendix 3 ¶ 28).

**(f)    The Fifth Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

98.    By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Fifth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

      i.    The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate. The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8). Therefore, the Fifth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**The Sixth Transfer**

**(a)    Transfer of an Interest of the Debtor in Property.**

99.    Under Texas law, the name on a bank account is prima facie proof of ownership of the account. *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208. Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds. *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

100.    By the following competent summary judgment evidence, the Trustee establishes

as a matter of law that the Sixth Transfer to Angelica was a transfer of an interest of Sadler in

property:

>   iv.    Signature Card for bank account XX9783 at Woodforest National Bank in the
>           name of Sadler Clinic PLLC.  (Appendix 6, Exhibit 1).
>
>   v.     The bank statement in the name of Sadler Clinic PLLC at Woodforest
>           National Bank for account XX9783 for the period of April 1, 2012 through
>           April 30, 2012, showing that an ACH in the amount of $8,966.16 cleared the
>           account on April 23, 2012.  (Appendix 7, Exhibit 2, p.15 of 18) (Appendix 4,
>           Exhibit 15).
>
>   vi.    Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that
>           three doctors with signature authority on the Signature Card for bank account
>           XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–
>           11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS*

*Fin. Corp.*, 669 F.3d at 261–63.

**(b)     The Sixth Transfer was for Angelica's Benefit.**

101.    By the following competent summary judgment evidence, the Trustee establishes

as a matter of law that the Sixth Transfer to Angelica was a transfer for Angelica's benefit:

>   i.     Angelica admits that the Sixth Transfer was for Angelica's benefit.
>
>           **REQUEST FOR ADMISSIONS NO. 65:** The Sixth
>           Transfer was to or for the benefit of Defendant.
>
>           **RESPONSE:** Admit.  (Appendix 5, p.29).

**(c)     The Sixth Transfer was on account of an antecedent debt owed by Sadler
          before such transfer was made.**

102.    By the following competent summary judgment evidence, the Trustee establishes

as a matter of law that the Sixth Transfer made to Angelica was on account of an antecedent debt

owed by Sadler before such transfer was made:

      i.    Angelica admits that the Sixth Transfer was on account of an antecedent debt.

> **REQUEST FOR ADMISSIONS NO. 68:** The Sixth Transfer was made for, or on account of the debt reflected on Invoice 8854.

> **RESPONSE:** Admit.  (Appendix 5, p.30).

      ii.    Invoice 8854 on its face identifies "Sadler Clinic Conroe" as the "Customer".

> 1. Invoice 8854 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,966.16 is for services rendered prior to April 14, 2012.  (Appendix 4, Exhibit 15).

      iii.    The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $8,966.16 cleared the account on April 23, 2012.  (Appendix 7, Exhibit 2, p.15 of 18).

**(d)    The Sixth Transfer was made while Sadler was insolvent.**

103.    The Trustee establishes as a matter of law that the Sixth Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)    The Sixth Transfer was made on or within 90 days before the date of filing the petition.**

104.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the Sixth Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

      i.    The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, establishing that an ACH in the amount of $8,966.16 cleared the account on April 23, 2012.  (Appendix 7, Exhibit 2, p.15 of 18).

      ii.    Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

      iii.    Additionally, Angelica admitted that the Sixth Transfer was made within ninety (90) days before June 15, 2012:

> **COMPLAINT PARAGRAPH 28:** The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).
>
> **ANSWER PARAGRAPH 28:** Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint. (Appendix 3 ¶ 28).

(f)     **The Sixth Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

105.     By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Sixth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

> i.     The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate. The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8). Therefore, the Sixth Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

**The Seventh Transfer**

(a)     **Transfer of an Interest of the Debtor in Property.**

106.     Under Texas law, the name on a bank account is prima facie proof of ownership of the account. *Whitney Nat'l Bank v. Baker*, 122 S.W.3d at 208. Moreover, a debtor's control over over funds in an account is further evidence of the debtor's ownership of such funds. *In re Southmark Corp.*, 49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

107.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Seventh Transfer to Angelica was a transfer of an interest of Sadler in property:

    i.     Signature Card for bank account XX9783 at Woodforest National Bank in the name of Sadler Clinic PLLC.  (Appendix 6, Exhibit 1).

    ii.    The bank statement in the name of Sadler Clinic PLLC at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $8,265.04 cleared the account on April 30, 2012.  (Appendix 7, Exhibit 2, p.15 of 18) (Appendix 4, Exhibit 16).

    iii.   Statement of Financial Affairs of the Debtor Sadler Clinic PLLC showing that three doctors with signature authority on the Signature Card for bank account XX 9783 were partners of the Debtor Sadler Clinic PLLC.  (Appendix 9, p. 8–11).

*Whitney Nat'l Bank*, 122 S.W.3d at 208; *In re Southmark Corp.*,49 F.3d at 1116–17; *In re IFS Fin. Corp.*, 669 F.3d at 261–63.

### (b)    The Seventh Transfer was for Angelica's Benefit.

108.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Seventh Transfer to Angelica was a transfer for Angelica's benefit:

    i.     Angelica admits that the Seventh Transfer was for Angelica's benefit.

        **REQUEST FOR ADMISSIONS NO. 74:** The Seventh Transfer was to or for the benefit of Defendant.

        **RESPONSE:** Admit.  (Appendix 5, p.33).

### (c)    The Seventh Transfer was on account of an antecedent debt owed by Sadler before such transfer was made.

109.    By the following competent summary judgment evidence, the Trustee establishes as a matter of law that the Seventh Transfer made to Angelica was on account of an antecedent debt owed by Sadler before such transfer was made:

    i.     Angelica admits that the Seventh Transfer was on account of an antecedent debt.

> **REQUEST FOR ADMISSIONS NO. 77:** The Seventh Transfer was made for, or on account of the debt reflected on Invoice 9173.
>
> **RESPONSE:** Admit.  (Appendix 5, p.34).

ii.   Invoice 9173 on its face identifies "Sadler Clinic Conroe" as the "Customer".

   1.   Invoice 9173 addressed to "Customer" Sadler Clinic Conroe in the amount of $8,265.04 is for services rendered prior to April 22, 2012.  (Appendix 4, Exhibit 16).

iii.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, showing that an ACH in the amount of $8,265.04 cleared the account on <u>April 30, 2012</u>.  (Appendix 7, Exhibit 2, p.15 of 18).

**(d)     The Seventh Transfer was made while Sadler was insolvent.**

110.     The Trustee establishes as a matter of law that the Seventh Transfer was made while Sadler was insolvent based upon the presumption of such insolvency under 11 U.S.C. § 547(f).

**(e)     The Seventh Transfer was made on or within 90 days before the date of filing the petition.**

111.     By the following competent summary judgment evidence, the Trustee establishes as a matter of law, the Seventh Transfer was made on or within ninety (90) days before the date of the filing of the bankruptcy petition on June 15, 2012:

i.   The bank statement at Woodforest National Bank for account XX9783 for the period of April 1, 2012 through April 30, 2012, <u>establishing that an ACH in the amount of $8,265.04 cleared the account on April 30, 2012</u>.  (Appendix 7, Exhibit 2, p.15 of 18).

ii.   Sadler Clinic PLLC's Chapter 11 bankruptcy petition filed on June 15, 2012 (Appendix 1).

iii.   Additionally, Angelica admitted that the Seventh Transfer was made within ninety (90) days before June 15, 2012:

**COMPLAINT PARAGRAPH 28:** The Transfers were made on or within ninety (90) days before the Petition Date (Appendix 2 ¶ 28).

**ANSWER PARAGRAPH 28:** Angelica admits the allegations set forth in paragraph 28 of the Trustee's Complaint. (Appendix 3 ¶ 28).

   (f)     **The Seventh Transfer enabled Angelica to receive more than it would receive had the transfer not been made.**

112.    By the following competent summary judgment evidence, the Trustee establishes as matter of law that the Seventh Transfer enabled Angelica to receive more than what it would have received had the transfer not been made:

     i.    The total amount of secured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $0.00; the total amount of unsecured claims scheduled by the substantively consolidated bankruptcy estate of Sadler Clinic PLLC and Montgomery County Management Company is $7,523,875.33. The total amount of secured and unsecured claims is in excess of the value of assets in the Debtors' substantively consolidated bankruptcy estate. The total value of the assets available for distribution in this Chapter 7 case to unsecured creditors is insufficient to pay all unsecured claims in full. (Appendix 8). Therefore, the Seventh Transfer enabled Angelica to receive more than what it would have received had the transfer not been made.

### TRANSFERS RECOVERABLE UNDER 11 U.S.C. § 550

113.    The Trustee re-alleges and incorporates all of the foregoing and ensuing allegations as if fully set forth herein at length.

114.    To the extent that transfer are avoidable under 11 U.S.C. § 547, the Trustee may recover such transfers or the value thereof from either the initial transferee or the party for whose benefit such transfers were made. 11 U.S.C. § 550(a)(1).

**The First Transfer**

115.    The First Transfer is recoverable under 11 U.S.C. § 550.

     i.    Angelica admitted that it was the initial transferee of the First Transfer:

> **REQUEST FOR ADMISSIONS NO. 25:** Angelica was the initial transferee of the First Transfer.
>
> **RESPONSE:** Admit.  (Appendix 5, p.11).

116.    The Trustee is entitled to avoid and recover the First Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

## The Second Transfer

117.    The Second Transfer is recoverable under 11 U.S.C. § 550.

    i.    Angelica admitted that it was the initial transferee of the Second Transfer:

> **REQUEST FOR ADMISSIONS NO. 34:** Angelica was the initial transferee of the Second Transfer.
>
> **RESPONSE:** Admit.  (Appendix 5, p.15).

118.    The Trustee is entitled to avoid and recover the Second Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

## The Third Transfer

119.    The Third Transfer is recoverable under 11 U.S.C. § 550.

    i.    Angelica admitted that it was the initial transferee of the Third Transfer:

> **REQUEST FOR ADMISSIONS NO. 43:** Angelica was the initial transferee of the Third Transfer.
>
> **RESPONSE:** Admit.  (Appendix 5, p.19).

120.    The Trustee is entitled to avoid and recover the Third Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

## The Fourth Transfer

121.    The Fourth Transfer is recoverable under 11 U.S.C. § 550.

    i.    Angelica admitted that it was the initial transferee of the Fourth Transfer:

**REQUEST FOR ADMISSIONS NO. 52:** Angelica was the initial transferee of the Fourth Transfer.

**RESPONSE:** Admit.  (Appendix 5, p.23).

122.     The Trustee is entitled to avoid and recover the Fourth Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

**The Fifth Transfer**

123.     The Fifth Transfer is recoverable under 11 U.S.C. § 550.

 i.     Angelica admitted that it was the initial transferee of the Fifth Transfer:

**REQUEST FOR ADMISSIONS NO. 61:** Angelica was the initial transferee of the Fifth Transfer.

**RESPONSE:** Admit.  (Appendix 5, p.27).

124.     The Trustee is entitled to avoid and recover the Fifth Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

**The Sixth Transfer**

125.     The Sixth Transfer is recoverable under 11 U.S.C. § 550.

 i.     Angelica admitted that it was the initial transferee of the Sixth Transfer:

**REQUEST FOR ADMISSIONS NO. 70:** Angelica was the initial transferee of the Sixth Transfer.

**RESPONSE:** Admit.  (Appendix 5, p.31).

126.     The Trustee is entitled to avoid and recover the Sixth Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

**The Seventh Transfer**

1.     The Seventh Transfer is recoverable under 11 U.S.C. § 550.

 i.     Angelica admitted that it was the initial transferee of the Seventh Transfer:

**REQUEST FOR ADMISSIONS NO. 79:** Angelica was the initial transferee of the Seventh Transfer.

**RESPONSE:** Admit.  (Appendix 5, p.35).

2.      The Trustee is entitled to avoid and recover the Seventh Transfer from Angelica pursuant to 11 U.S.C. §§ 547 and 550.

## VII. CONCLUSION

WHEREFORE, the Trustee prays that the Court grant this *Motion for Summary Judgment* and grant such other relief as the Court finds equitable under the circumstances.

Respectfully submitted,

*/s/ Simon Mayer*
Steven Shurn  TBN: 24013507
   sshurn@hwa.com
Simon Mayer        TBN: 24060243
   smayer@hwa.com
HUGHESWATTERSASKANASE, L.L.P.
333 Clay Street, 29th Floor
Houston, Texas 77002
Phone: (713) 759-0818
Fax: (713) 759-6834
**ATTORNEYS FOR PLAINTIFF,**
**ALLISON D. BYMAN,**
**CHAPTER 7 TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2015, a true and correct copy of the foregoing was served on the following party by ECF.

Thomas H. Grace
Vorys, Sater, Seymour and Pease
700 Louisiana Street, Suite 4100
Houston, Texas 77002
Email:        thgrace@vorys.com

and

David D. Farrell
Thompson Coburn LLP
One US Bank Plaza, Suite 3200
St. Louis, Missouri 36101
Email:        dfarrell@thompsoncoburn.com

**ATTORNEYS FOR DEFENDANT**

*/s/ Simon Mayer*
Simon Mayer